AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Arkansas

US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

AUG 15 2016

DOUGLAS F. YOUNG, Clerk
By _____ Deputy Clerk

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 956-612-3753 & IMSI 310410810519341

)
)
)
)
)
)

Case No. 5:16 CM 74

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A. This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the     Southern     District of     Texas     , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) | Distribution, Possession With Intent to Distribute Controlled Substances (methamphetamine) |
| 21 U.S.C. 846 | Conspiracy |

The application is based on these facts:
See Attached Affidavit of DEA TFO Robert Thorson.

☑ Continued on the attached sheet.  From termination of data collection
☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Robert Thorson*
*Applicant's signature*

DEA TFO Robert Thorson
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  8/15/16

City and state:  Fayetteville, Arkansas

*Erin L. Setser*
*Judge's signature*

Hon. Erin L. Setser, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 956-612-3753, with International Mobile Subscriber Identity Number (IMSI) 310410810519341(the "Target Telephone"), whose wireless service provider is **AT&T**.

2. Information about the location of the Target Telephone that is within the possession, custody, or control of **AT&T,** including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five days, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of **AT&T; AT&T** is required to disclose the Location Information to the government. In addition, **AT&T** must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with **AT&T's** services, including by initiating a signal to determine the location of the Target Cell Phone on **AT&T's** network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate **AT&T** for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 956-612-3753, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY / ELECTRONIC SERIAL NUMBER 310410810519341 | Case No. _____ <br><br> **Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, **Task Force Officer Robert Thorson**, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 956-612-3753, with International Mobile Subscriber Identity (IMSI) number **310410810519341** (the "Target Cell Phone"), whose service provider is **AT&T**, a wireless telephone service provider headquartered at **11760 U.S. HWY 1 Suite 600, North Palm Beach, Florida**. The subscriber for the target cell phone is listed by AT&T as "prepaid customer," with an address of 17330 Preston Road, Dallas, Texas 75252. The target cell phone has been active since July 6, 2015. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

Affidavit page 1

2. I am a Task Force Office ("TFO") of the Drug Enforcement Administration ("DEA") and have served in that capacity for approximately four years, and have spent approximately nine years as a Narcotics Detective for the Springdale Police Department, where I have been employed for sixteen years. I am currently assigned to the Fayetteville Resident Office, Fayetteville, Arkansas. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516(1). As a federal law enforcement officer, I have specialized training and experience in narcotics smuggling and distribution investigations. During my employment with DEA, I have participated in numerous investigations into the unlawful importation, possession with intent to distribute, and distribution of controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover transactions, court-ordered wiretaps, analysis of phone and financial records, and arrests of numerous drug traffickers. I have been the affiant on several other search warrants. I have debriefed numerous defendants, confidential informants, and other witnesses having extensive knowledge of the inner workings of major narcotics trafficking organizations, including those operating internationally. I have also spoken on numerous occasions with other experienced narcotics investigators, concerning the methods and practices of drug traffickers and money launderers. Furthermore, I have attended training courses specialized in the investigation of narcotics trafficking. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become familiar with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute

narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities. Through my training and experience, I am familiar with the operation of international drug trafficking organizations. I am familiar with the ways in which drug traffickers conduct their business – including the method and means in which they: obtain, manufacture, import, and distribute narcotics; make drug payments and launder drug proceeds; and communicate with organizational members. My training and experience as a law enforcement officer, and my conversations with state, federal, and law enforcement officers in other countries form the basis of the opinions and conclusions set forth below.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and as such does not set forth all of my knowledge about this matter. Based on the facts set forth in this affidavit, Affiant submits there is probable cause to believe that violations of **21 USC 841(a)(1) and 846** have been committed, are being committed, and will continue to be committed by William Reyes and others. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of additional individuals who are engaged in the commission of these offenses in concert with Reyes.

## PROBABLE CAUSE

4. In the month of August, 2016, Agents and Task Force Officers of the DEA have been conducting an investigation concerning the drug trafficking activities of Jose Hernandez.

Affidavit page 3

Hernandez is the methamphetamine source of supply for a drug trafficking organization located in Laredo, Texas which supplies methamphetamine in the Northwest Arkansas area.

5. On August 05, 2016, Task Force Officers Jacob Lawson and Robert Thorson and Springdale Police Department (SPD) Officer Guillermo Sanchez, met with a Confidential Source (CS) at the DEA Fayetteville Resident Office (FRO). The CS has provided information over the course of this investigation which has been corroborated through telephone records and recorded telephone calls. During the meeting agents spoke with the CS about Jose Hernandez and his narcotics trafficking operation. The CS placed a recorded phone call to Hernandez on telephone number 956-612-3753 (hereafter, the target number) and arranged for the future purchase of multiple pounds of methamphetamine.[1] During the course of the conversation Hernandez discussed the price of each pound of methamphetamine, utilizing the term "tickets" to refer to a pound of methamphetamine. Based on my training, experience, and knowledge of this and similar investigations I am aware that over the telephone drug traffickers frequently use coded language to refer to controlled substances, and in this instance I believe when Hernandez speaks of a "ticket," he is speaking of a pound of methamphetamine.

6. Hernandez instructed the CS to research the local Northwest Arkansas area on the current price of a pound of methamphetamine. Hernandez advised the CS that the "tickets" are selling at the least 450 and the most expensive 7. Based on my training, experience, and

---

[1] All of the CS's communications with Hernandez have been in Spanish. A native-Spanish speaking law enforcement officer participating in the investigation has translated all of the CS's communications with Hernandez. The communications quoted and summarized in this Affidavit are not meant to be viewed as verbatim transcripts, but do give the substance of the communications between Hernandez and the CS.

Affidavit page 4

knowledge of this and similar investigations, I believe when Hernandez says "450" he means either $450 or $4,500 dollars, and when Hernandez says "7" he means either $700 or $7,000 dollars. Hernandez further advised the CS that he supplies 100 "tickets" and up, so if the CS needed 20 "tickets" to sell, he would secure another location for the rest to arrive somewhere else. During the conversation, the CS inquired about Hernandez's location, and he stated that he is in Laredo, Texas. The conversation ended with Hernandez advising the CS to call the following Monday with the information he requested, and in two weeks he would give the CS an answer.

7. On August 08, 2016, Task Force Officers Jacob Lawson and Robert Thorson

8. and SPD Officer Guillermo Sanchez, met with the CS at a neutral location in Fort Smith, Arkansas. During the meeting the CS again contacted Jose Hernandez on the target number and further discussed Hernandez traveling to Northwest Arkansas to supply the CS with multiple pounds of methamphetamine. The CS and Hernandez spoke about the CS finding a location to store the methamphetamine once it arrives. Hernandez advised the CS that when the "tickets" arrive in northwest Arkansas that he would also be present. The CS also inquired as to how Hernandez would want to handle payment for the methamphetamine and Hernandez advised he would speak to the CS about that when he arrived. The conversation concluded with Hernandez advising he would be in contact with the CS.

9. Based on my training, experience and knowledge of this investigation, I believe Jose Hernandez is distributing methamphetamine and that Hernandez uses the target telephone to arrange the distribution of methamphetamine. In my experience, the general location of the

Affidavit page 5

target telephone gathered from cell site/sector location, GPS location, or other means, can yield evidence which is relevant and material to an ongoing criminal investigation of the specified offenses. Such information includes leads relating to: (1) the geographic breadth of the suspected drug trafficking cell; (2) the transportation routes and means for trafficking narcotics and drug proceeds from one geographic area to another; (3) other geographic locations where a drug organization may be engaging in similar conduct; (4) the geographic location of "stash" houses; and (5) the geographic locations where meetings are held to exchange narcotics and money. Further, the geographic location of the target telephone can be used to corroborate the observations of surveillance agents. Surveillance agents can compare observations of the user of the target telephone with geographic information in order to verify the identification and location of the user of the target telephone.

10. Given the ongoing nature of this investigation, immediate notification of this warrant will have an adverse result. Accordingly, delayed notice of 30 days is requested under 18 U.S.C. § 3103a.

11. Based on the same concerns that knowledge of the investigation would jeopardize its effectiveness, I request that this affidavit, the application, and the order as well as any other related documents be sealed pursuant to the provisions of Western District of Arkansas general rule 7.

12. In my training and experience, I have learned that **AT&T** is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone

service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

13. Based on my training and experience, I know that **AT&T** can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on **AT&T's** network or with such other reference points as may be reasonably available

14. Based on my training and experience, I know that **AT&T** can collect cell-site data about the Target Cell Phone.

Affidavit page 7

## AUTHORIZATION REQUEST

15. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

16. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed.  There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705.  Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution.  *See* 18 U.S.C. § 3103a(b)(1).  As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property.  *See* 18 U.S.C. § 3103a(b)(2).  Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above.  *See* 18 U.S.C. § 3103a(b)(2).

17. I further request that the Court direct **AT&T** to disclose to the government any information described in Attachment B that is within the possession, custody, or control of **AT&T**.  I also request that the Court direct **AT&T** to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in

Affidavit page 8

Attachment B unobtrusively and with a minimum of interference with **AT&T's** services, including by initiating a signal to determine the location of the Target Cell Phone on **AT&T**'s network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate **AT&T** for reasonable expenses incurred in furnishing such facilities or assistance.

18. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

19. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed pursuant to the provisions of Western District of Arkansas general rule 7. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

*Robert Thor* (signature)

Robert Thorson
Task Force Officer
Drug Enforcement Administration

Affidavit page 9

Subscribed and sworn to before me on this 15th day of ___August___, 2016

_____
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE
WESTERN DISTRICT OF ARKANSAS

Affidavit page 10